UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Nos.  06-158 (RJL) |
| v. | : | |
| CHRISTOPHER A. JOHNSON | : | |
| Defendant. | : | Sentencing: October 13, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision.  The government is requesting that the Court accept the recommendations of the Presentence Report, including the two-level enhancement for use of a death threat; and sentence the defendant to 57 months' incarceration.

A.  Procedural Background

On August 1, 2006, the defendant pleaded guilty to one count of bank robbery and admitted to the commission of another bank robbery, both committed in the District of Columbia.

In both bank robberies (occurring on April 1 and April 2, 2006), the defendant passed a note which demanded money, threatened to shoot someone, and warned against any "sudden moves."  The

-2-

defendant stole a total of $1,100, an amount he agreed to repay as restitution, in his plea agreement.

### B. Sentencing Guidelines Analysis

The Pre-Sentence Report correctly states that the base offense level for the defendant's conduct is 20 (§2B3.1(a)), increased by 2 levels because the victim is a financial institution (§2B3.1(b)(1)) and 2 levels for a "death threat" (§2B3.1(b)(2)(F)), and reduced three levels for acceptance of responsibility (§3E1.1).

### C. The Defendant Made a Death Threat

The parties have agreed that the defendant made a death threat each time he said he would shoot people in the bank.  This more than sufficiently justifies a two-level upward adjustment, under U.S.S.G. §2B3.1(b)(2)(F).

The commentary to the guideline states:

> "A threat of death," . . . may be in the form of an oral or written statement, act, gesture, or combination thereof.  Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply.  For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", or "Give me the money or you are dead" would constitute a threat of death.  The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G. §2B3.1, Comment 6 (2003).

-3-

The D.C. Circuit's test for whether an "express threat of death" has been made is whether "a reasonable person in the position of the immediate victim of the robbery would have (1) very likely believed that the robber made a threat and that threat was to kill and (2) likely thought that his or her life was in peril, thereby experiencing 'significantly greater fear' than the intimidation required to commit robbery." United States v. Robinson, 86 F.3d 1197, 1202 (D.C. Cir. 1996) ("Give me one pack of 20s or I will shoot somebody in here now" is a death threat) (Tatel, J.). Robinson, along with the only other D.C. case discussing "death threats," focused mainly on whether the threat had to be directed specifically at the victim teller, as opposed to anyone else in the zone of danger. See United States v. Wolff, 195 F.3d 37 (D.C. Cir. 1999) ("I have a gun. I will kill people" is also a death threat, even if it refers to patrons in the bank).

Thus, the threats in this case fit squarely within the D.C. Circuit's view of the enhancement, and are rendered even more egregious by the note's reference to a "partner" who would wait outside the bank at 5 p.m., presumably to harm bank employees at the end of the business day. We ask the Court to find that these threats are more than enough to put a reasonable person (in this case, a bank teller in the context of a robbery) in fear for his or her life, and that this fear that a life was "in peril" was a

-4-

"significantly greater fear" than the intimidation required to commit the robbery.  See Robinson, supra, 86 F.3d at 1202.

### D.  The Defendant Deserves a Sentence in the High End of the Range

The defendant is now convicted of one robbery, but he admitted to two *and* that the second robbery can be considered as relevant conduct.  As the PSR correctly notes (*see* PSR at ¶61), viewing the second robbery as relevant conduct should add two levels, increasing the appropriate range to 57 to 71 months.  The government did not file an objection to the calculation omitting the relevant conduct and therefore does not argue now that the range is incorrect.  The government now does argue, however, that the high-end sentence takes into account the second robbery.  The government believes that 57 months, a sentence slightly less that five (5) years, is more than richly deserved, for two bank robberies involving death threats.

The government recognizes that the defendant may have a drug problem, but the defendant has had numerous opportunities to solve that problem, with no success.  It appears that the only way to protect the public from this defendant's behavior is to isolate him for a long period of incarceration.

### E.  Sentencing factors under 18 U.S.C. §3553

The Court has explicitly requested that the parties provide a sentencing recommendation that takes into account the factors set forth in 18 U.S.C. §3553(a), as follows:

-5-

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed --

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for --

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

            (i) issued by the Sentencing Commission ...; and

            (ii) that, . . . are in effect on the date the defendant is sentenced; ...

    (5) any pertinent policy statement --

        (A) issued by the Sentencing Commission ... and

        (B) that, . . . is in effect on the date the defendant is sentenced.

-6-

>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).  It is clear from the explicit language of the statute that the framers both endorse and respect the ranges set by and the policy statements made by the United States Sentencing Commission, itself a panel, as the Court has acknowledged in prior cases, made up primarily of distinguished District Court Judges.

It is also apparent that the statute that the Court has singled out for the parties' analysis -- §3553(a) -- is the lynchpin of the Guidelines drafted by the Commission, which set forth in its preamble its reliance on the statute and calls out each and every factor set forth therein.  We note most particularly the factor set forth in §3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which is the heart and spirit of the Guidelines.  See 18 U.S.C. §3553(a)(6).

We note these cross-references in support of our position that the Guidelines represent a careful and eminently reasonable crafting of facts, circumstances, characteristics, and policies -- all explicitly consistent with §3553(a) -- toward the sentencing recommendation the Court ultimately seeks.

-7-

A sentence of just under five years, as set forth in the guidelines is appropriate to the "nature and circumstances of the offense and the history and characteristics of the defendant" (see §3553(a)(1)), which in this case are intertwines.  The nature of this offense (bank robbery) is exacerbated the fact that this defendant is a convicted felon, having been convicted of theft, escape, violation of the bail reform act, and a probation violation.  The defendant has been sentenced to jail before; he has been supervised on probation; and yet he continues to violate the law – indeed, he has now escalated his conduct to violent robbery.  Also, it does not appear that he meets his most fundamental obligation to the many children he has fathered.  *See* PSR at p. 11, ¶55 (defendant has a debt of $68,095 in delinquent child support).

Given this defendant's criminal history and personal character, as well as the outrageous behavior of terrifying hard-working bank employees, a sentence of merely 57 months would at the very least "reflect the seriousness of the offense ... promote respect for the law, and ... provide just punishment for the offense" (see §3553(a)(2)(A)).  A sentence of nearly five years is long, but with a defendant as persistent as this defendant, a long sentence will either "afford adequate deterrence to [future] criminal conduct" (see §3553(a)(2)(B)) or will, at the very least, isolate and incapacitate the defendant so as "to protect the public from further crimes of the defendant" (see §3553(a)(2)(C)).

-8-

Clearly, although alternatives exist, incarceration is the only "kind[] of sentence[] available" where the defendant has been to jail, on probation, on supervised release, and yet persists in -- indeed, has escalated -- his law-breaking conduct.

All other pertinent portions of §3553(a) reference the Sentencing Guidelines, its policy statements, and its fundamental emphasis on uniform sentencing.  These factors all support the imposition of a five-year sentence, consistent with similar crimes and the defendants committing them.  The defendant can articulate no compelling fact or circumstance that justifies a sentence lower than similarly situated offenders.

    WHEREFORE, the government requests that the Court adopt the PSR, and impose a sentence of **57 months** incarceration.

                              Respectfully Submitted,

                              JEFFREY A. TAYLOR
                              UNITED STATES ATTORNEY
                              D.C. Bar Number 498610

              By: _____
                              BARBARA E. KITTAY
                              Assistant U.S. Attorney
                              D.C. Bar Number 414216
                              United States Attorney's Office
                              555 Fourth Street, N.W. Rm. 4846
                              Washington, D.C.  20530
                              Tel. (202) 514-6940
                              Barbara.Kittay @usdoj.gov